In the Matter of the ADOPTION OF
John Henry RICHARDS II

and

Douglas Michael Richards.

Jerome Joseph LEHMEN

and

Linda Katherine Lehmen, Respondents,

v.

Johnnie Franklin RICHARDS, Appellant.

No. WD 31862.

Missouri Court of Appeals,
Western District.

Oct. 27, 1981.

David Dwain Kite, Mid-Missouri Legal Services Corp., Jefferson City, for appellant.

F. Joe DeLong, III, Jefferson City, for respondents.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

NUGENT, Judge.

Johnnie Franklin Richards appeals from the decree of adoption of the circuit court of Cole County terminating the parental rights of the appellant, the natural father of John Henry Richards II and Douglas Michael Richards. The decree was entered after evidentiary hearing pursuant to § 453.040, RS Mo. 1978, on the joint petition of the boys' stepfather, Jerome Joseph Lehmen and their natural mother, Linda Katherine Lehmen. At the same time the court overruled the appellant's motion to modify the dissolution decree in the circuit court case of In Re: The Marriage of Linda K. Richards and Johnnie F. Richards. We reverse.

On May 31, 1979, Mr. Richards filed a motion to modify the 1975 decree which dissolved his marriage to Mrs. Lehmen, asking the court to decrease his monthly child support payments for the two children of the marriage and to grant him specific visitation rights. On August 20, 1979, Mr. and Mrs. Lehmen filed their amended petition for adoption of the two children and for the termination of Mr. Richards' parental rights, alleging that he had willfully abandoned and neglected the minor children for at least one year. Mr. Richards filed his answer to the adoption petition on August 28, 1979, alleging that he had been denied visitation with his children, Mrs. Lehmen had refused his offers of child support payments and that the children received disability benefits under the Social Security Act on his account. On October 1, 1979, Mr. and Mrs. Lehmen filed a motion to dismiss Mr. Richards' motion to modify the dissolution decree, and on December 3, 1979, Mrs. Lehmen filed her answer to the motion. In the interim, on October 12, 1979, Mr. Richards filed a motion to consolidate the two actions. Trial of the consolidated actions was held on March 10, 1980.

In his decree of adoption of April 14, 1980, the trial judge found that "the allegations of the petition for adoption are true" and the "natural father has willfully abandoned the minor children for one year and more immediately prior to the filing of the petition for adoption herein."

■ This case falls within § 453.040(4) which in part provides as follows:

The consent of the adoption of a child is not required of

. . . .

(4) A parent who has for a period of at least one year immediately prior to the filing of the petition for adoption, either willfully abandoned the child or willfully neglected to provide him with proper care and maintenance.

Therefore, our review of this case is governed by the holding of this court in In re Adoption of LeGrande, 581 S.W.2d 414 (Mo. App.1979), at 415:

In their efforts to balance the interest of natural parents and the welfare of children, the courts have clearly expressed that willful neglect and willful abandonment mean the intent or mental attitude of the natural parent.

. . . .

Each case must be decided upon its own individual circumstances. Such cases, being of an equitable nature, require this court to review both the facts and the law pursuant to Rule 73.01. (Citations omitted.)

Mr. Richards and Linda Richards (now Lehmen) were married on September 16, 1972. Their sons John Henry and Douglas Michael were born in 1973 and 1975. The 1975 decree of dissolution granted Linda custody of the children and ordered Mr. Richards to pay $75 a month per child as support. Linda married Jerome Lehmen in March, 1978.

At the trial Mr. Lehmen testified that Mr. Richards had paid absolutely no child support and was over $8000 in arrears. Mr. Richards said he "made some payments on and off" shortly after the divorce as well as some payments to an attorney. The last payment was in December, 1977, but he had no records or receipts to buttress his testimony. Mr. Richards explained that among the reasons for his repeated defaults, was the fact that he had been disabled since January, 1978 and was occasionally unem-

ployed prior to that. The record does not show that Mrs. Lehmen attempted to collect child support payments through the court. Mr. Richards also claimed Mrs. Lehmen refused payments; he had a tentative recollection of "one or two" such instances. Mrs. Lehmen testified that she refused payment only once when he presented her a $100 check. She balked because she doubted its validity, and she insisted on a more reliable medium of payment. Although he testified that he then gave her the same amount in cash, she denied it. Undisputed, however, was the fact that since June, 1979 the children had each been receiving $61.09 per month in governmental assistance due to Mr. Richards' disability. Mrs. Lehmen affirmed the fact that Mr. Richards contacted her in January, 1979 to obtain the boys' social security numbers in order to apply for benefits for them. Mrs. Lehmen placed these funds in a savings account for the children. The government also paid back benefits in excess of $2000. This, too, went into savings, except for $850 used to finance the adoption proceedings.

The parties agreed that Mr. Richards had visited the children with some frequency in the months immediately after the divorce. From 1976 onward, however, those meetings were sporadic at best. Mrs. Lehmen recalled Christmas visits in 1975 and 1976, as well as one in the spring of 1977. Mr. Richards acknowledged his visits were infrequent, but he blamed Mrs. Lehmen for that state of affairs. He testified that in 1976 he attempted to arrange visits ten or fifteen times, but Mrs. Lehmen rebuffed his overtures. Mrs. Lehmen flatly denied she had ever forbidden visitation. Mr. Richards recalled seeing the children near Christmas in 1977 or 1978. Without notifying Mrs. Lehmen in advance, he visited them about once a year while they were with a baby sitter. According to Mrs. Lehmen, these meetings ceased early in 1977. Mr. Richards fixed the last visit in August, 1978. In January, 1980 Mr. Richards encountered John on his way home from kindergarten. The child did not know his father. To reverse that estrangement, Mr. Richards arranged a visit. It was cancelled after he insisted on meeting the children in a private part of the Lehmen home. Mrs. Lehmen refused that condition. She wanted to be present because the boys did not know their father.

Prior to filing the motion on May 31, 1979, Mr. Richards never attempted to enforce his visitation rights through the courts. He contacted attorneys in 1976 and 1977, but said he could not afford to retain one. He contacted the court and was again told to see an attorney. He also talked to an employee of the Division of Family Services who was unable to assist him.

 Section 453.040(4) is disjunctive: either willful abandonment *or* willful neglect will obviate parental consent. *In re Adoption of Pearson*, 612 S.W.2d 30, 35 (Mo.App.1981). Intent is the central issue in both, and it is to be gleaned from the actions of the parties and surrounding circumstances. *Lambertus v. Santino*, 608 S.W.2d 502, 505–06 (Mo.App.1980); *LeGrande, supra,* at 415. To ascertain intent, examination of the actions of the natural parent outside the statutory one-year period is permissible and often necessary. *Pearson, supra,* at 34. In the instant case, the petition for adoption alleged that Mr. Richards both willfully abandoned and willfully neglected the boys. The trial court expressly found willful abandonment; in addition, it found generally that the allegations of the petition were true, apparently including that of willful neglect.

 In *Adoption of R.A.B. v. R.A.B.*, 562 S.W.2d 356 (en banc 1978), Missouri's Supreme Court noted at 357 that because either consent or the proper waiver of consent under § 453.040(4) is jurisdictional, willful abandonment or willful neglect must be proved before questions regarding the fitness of the petitioners and the child's welfare are reached. Citing *In re Perkins*, 234 Mo.App. 716, 117 S.W.2d 686 (1938), the court at 361 reaffirmed the principle that

the parent's consent to the adoption is not to be dispensed with upon the ground of his neglect of his child unless it is shown that such neglect was intentional, deliber-

ate, and without just cause or excuse, evincing a settled purpose to forego his parental duties over the period of time which the statute prescribes.

Our review of the record in the instant case does not disclose that the trial court's finding of neglect is supported by clear, cogent and convincing evidence of Mr. Richards' "settled purpose to forego his parental duties" in the year between August, 1978 and August, 1979.[1] The fact that he made arrangements to obtain disability coverage for the two children in January, 1979, six months before the Lehmens filed their original petition for adoption, convinces us that Mr. Richards did not forego all of his parental duties so as to constitute willful neglect.

Since *In re Watson's Adoption*, 238 Mo. App. 1104, 1113–14, 195 S.W.2d 331, 336 (1946), the courts of Missouri have usually defined willful abandonment as:

first, a voluntary and intentional relinquishment of the custody of the child to another, with the intent to never again claim the rights of a parent or perform the duties of a parent; or, second, an intentional withholding from the child, without just cause or excuse, by the parent, of his presence, his care, his love, and his protection, maintenance, and the opportunity for the display of filial affection.

A different definition of willful abandonment surfaces occasionally. As this court said in *In re Adoption of S.*, 581 S.W.2d 113, 116 (Mo.App.1979), willful abandonment is "a settled purpose to forego all parental duties and relinquish all parental claims." The claims and duties of a parent "are opposite sides of the same coin."

The evidence leaves little doubt that Mr. Richards has not been a model father to his sons. We do not condone his earlier irre-

sponsible attitude regarding his financial obligation imposed by law or his paternal obligation dictated by conscience. Nonetheless, his determination to include his sons as beneficiaries of his disability (before the filing of the adoption petition) as well as his attempts to visit with them in January, 1980 (following the filing of the adoption petition) demonstrate that he has some intent to perform his duties as a parent to maintain and protect his children and that as yet he has not demonstrated that "settled purpose to forego all parental duties and relinquish all parental claims." We agree with the Eastern District which in *In re S.C.H. v. C.W.H.*, 587 S.W.2d 945 (Mo. App.1979), said at 948: "[S]uch actions are strong and persuasive indicia that no willful abandonment has taken place, and a trial court concluding otherwise should express in its findings with some particularity its reasons for disregarding activity seemingly demonstrating such strong parental interest."

For the foregoing reasons, the judgment of the trial court in the adoption case is reversed, and the case is remanded to that court with directions to vacate its order overruling Mr. Richards' motion to modify the 1975 decree of dissolution and to allow that case to proceed on the merits.[2]

All concur.

---

1. Respondents filed the original petition on June 20, 1979. A lurking issue is whether the one-year period relates back from June or August. *See* § 453.040(4) (1978). On the facts of this case, the distinction is inconsequential; *Pearson, supra*, however, resolved an analogous question, finding the year is measured from the filing of the petition which is "before the court for consideration." The original peti-

tion is not even part of the record on appeal; therefore, the amended petition of August 20, 1979, is the point of reference.

2. On this appeal the parties raised no question about the propriety of the consolidation of the trial of the motion to modify the decree of dissolution with the trial of the adoption case.