## In re ADOPTION OF S. E. F.

### No. 12442.

Missouri Court of Appeals,
Southern District,
Division Three.

May 20, 1982.

Gordon Rolla Upchurch, Union, for appellants.

Jerry L. Wilkerson, Salem, Herbert A. Kasten, Jr., Ste. Genevieve, for respondent.

MAUS, Chief Justice.

This case involves an adoption by a stepfather. The mother and natural father

---

were married in 1974. The child whose adoption is sought was born to them on May 8, 1975. The marriage was dissolved on September 13, 1976. Custody of the child was awarded to the mother. The parties were reconciled in June of 1977. After that date they lived together, without benefit of marriage, with the child until August or September, 1979. The mother then left with the child. She said she did so because the father had bruised the child by a spanking. She married the co-petitioner step-father on December 19, 1979. The petition for adoption based upon an allegation of the father's abandonment and neglect was filed December 12, 1980. The trial court was not requested to and did not make detailed findings of fact. It did find in general terms the father had not willfully neglected to provide the child with care and maintenance and had not willfully abandoned the child. The petition was denied. The petitioners appeal.

The appellants' points on appeal are: (1) The trial court erroneously applied the law by requiring proof of absolute abandonment or willful neglect; (2) the decision of the trial court is against the weight of the evidence; and (3) the decision of the trial court is not supported by substantial evidence. The petitioners argue the court erroneously applied the law by reviewing the evidence, citing the denial of the petition and then surmising "the court believed that absolute abandonment or absolute neglect were required". As the court did not conclude otherwise, it must be assumed the court correctly applied the requirements of § 453.040(4), RSMo 1978. In reality, the position of the appellants is that the decision of the trial court is against the weight of the evidence. The principles governing and limiting this court's review of that decision are well established. Rule 73.01; *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

■ To support their position, the appellants first rely upon the uncontradicted evidence the father contributed no money to the support of the child from August, 1979, to the time of the trial on August 11, 1981.

However, there was testimony from which the court could have found the following facts relative to that failure. In February, 1978, the father was injured at his employment. He received temporary total workmen's compensation payments and ultimately a settlement based upon a rating of 40% permanent-partial disability. He was provided rehabilitation training as a taxidermist. The father used the workmen's compensation payments and settlement for the support of the family and the establishment of a taxidermy business. The evidence concerning the profitability of that business was vague. However, there was no evidence that it produced sufficient income to provide support for the child. In June, 1981, the father started working as a stationary engineer at $9.20 an hour. As stated, by the time of the trial on August 12, 1981, the father still had not contributed to the support of the child. He did express his intention to start doing so. While the period from June, 1981, to August 12, 1981, was after the petition was filed, it can be properly considered as bearing upon the intent of the father. *In re E. C. N.*, 517 S.W.2d 709 (Mo.App.1974). However, there was no evidence to establish the father's ability to make support payments during the year immediately prior to the filing of the petition. Insofar as financial support is concerned, the finding of the trial court that the father did not *willfully* neglect the child within the meaning of § 453.040(4) was supported by and was not against the weight of the evidence. Compare *Adoption of R. A. B. v. R. A. B.*, 562 S.W.2d 356 (Mo. banc 1978); *S. C. H. v. C. W. H.*, 587 S.W.2d 945 (Mo.App.1979).

The other factual basis for the appellants' contention the trial court erred is the minimal contact the father had with the child after August, 1979. The mother and father and child lived together in a community in the St. Louis area. After the mother left with the child in August, 1979, she lived in another community in the St. Louis area for approximately three months. During this time the father visited the child twice. After the mother married the co-petitioner on December 19, 1979, they lived in still a

different community in the St. Louis area for approximately two months. During this time the father, by telephone, made one attempt to arrange visitation with the child. The appellants then moved to a community an appreciable distance from St. Louis. After this move, the father did not contact the mother or child until after the petition for adoption was filed. The mother testified that his inquiries after that date were limited to questions concerning the adoption. It is obvious that after August, 1979, there was little contact between the father and the child. It is equally obvious the father's efforts to maintain a relationship with the child were not those of a model father. See *Matter of Adoption of Richards,* 624 S.W.2d 483 (Mo.App.1981).

■ However, for that period of minimal contact to provide a basis for adoption without the father's consent, it must be found to "evidence an intent or mental attitude to forsake the status of a parent—at least for the period of time declared in the statute". *In re Adoption of Rule,* 435 S.W.2d 35, 40 (Mo.App.1968). It must have been "intentional, deliberate and without just cause or excuse". *D___ G___ K___ v. D___ G___ K___,* 545 S.W.2d 81, 82 (Mo.App. 1976). The circumstances surrounding the minimal contact included the following. The dissolution decree limited the father's visitation to the hours of 10:00 a. m. to 2:00 p. m. on the first and third Sundays of each month in the presence of the mother. See *In re E. C. N.,* 517 S.W.2d 709 (Mo.App. 1974). The mother initially, and then the mother and the step-father, made it clear that the father's visitation would be limited to and under the conditions set forth in the decree. The stepfather did state however that probably the father would not have been invited into the home, but visitation arranged someplace else. When the appellants moved to the distant community, they did so without contacting the father or supplying their new address to him. The mother instructed her family and friends not to divulge her address to the father, but to inform her of any inquiry made by him. She said, "I would call him back or I would get in touch with him, get his address or whatever and I would get back in touch with him, but I asked them not to just tell him directly where I lived because I was afraid for him just to come barging in one day or something and, for S___, S___'s benefit".

The father stated he did not write or send cards to the child because the child could not read. He said that his conversations on the telephone with the mother usually were terminated with quarreling. He also testified that he had been told that if he didn't have the child support money he could not see the child and that he understood this to be true. The mother did not deny making such statements to the father.

■ In view of the results reached, the trial court obviously determined the excuses of the father to be credible. Rule 73.-01(a)(2). Of particular importance is the fact that during the critical year the father had been told that if he had no support money, he could not see the child and that he understood this to be true. There is evidence to support the conclusion of the trial court that the father's minimal contact for the period of one year prior to the filing of the petition was not willful, intentional, deliberate and without just cause or excuse. This court does not have a firm belief that such conclusion is against the weight of the evidence. Compare *Adoption of R. A. B. v. R. A. B.,* supra; *Matter of Adoption of Richards,* supra; *In re E. C. N.,* supra; *In re Adoption of LeGrande,* 581 S.W.2d 414 (Mo.App.1979). The respondent's motion to dismiss the appeal taken with the case is overruled. The judgment of the trial court is affirmed.

TITUS and FLANIGAN, JJ., concur.