Phillip S. Huffman, Hartville, Jerry L. Redfern, Springfield, for petitioners-respondents.

Paul F. Reichert, Sherwood, Bruer & Reichert, Springfield, for appellant.

Before STONE, P. J., and HOGAN and TITUS, JJ.

TITUS, Judge.

Petitioners, husband and wife, filed their petition July 12, 1974, to adopt brothers Mike and Russ. The natural mother, a sister of petitioner husband, gave her written consent to the adoption (§ 453.030–3) [1] but the natural father did not consent and contested the action. After the trial court entered a decree of adoption pursuant to § 453.080, the father appealed.

The principal issue litigated was whether the father's consent to the adoption could be dispensed with because he had "for a period of at least one year immediately prior to the filing of the petition for

## ADOPTION OF MIKE AND RUSS
### No. 10062.

Missouri Court of Appeals, Springfield District.

June 20, 1977.

Motion for Rehearing or to Transfer to Supreme Court Denied July 11, 1977.

1. References herein to statutes and rules are to RSMo 1969, V.A.M.S., and to Missouri Supreme Court Rules of Civil Procedure, V.A.M.R.

adoption, either willfully abandoned the [children] or willfully neglected to provide [them] with proper care and maintenance." § 453.040(4). The decree was predicated upon a finding of the existence of the second statutory alternative.

Mike, born September 26, 1970, was seven or eight months of age when his father separated from his mother in April or May 1971 and moved to California where he has resided ever since. Russ was born August 16, 1971, some three or four months subsequent to his father's departure and has never seen his father. The natural parents were divorced in November 1971. While we are told the divorce decree was silent as to the amount of child maintenance required of the father, this would not relieve him of his primary and continuing duty to support his sons. *State v. Arnett*, 370 S.W.2d 169, 174[13] (Mo.App.1963); *In re Adoption of P. J. K.*, 359 S.W.2d 360, 365 (Mo.App.1962); 27B C.J.S. Divorce § 319(1) b., p. 593.

The father remarried in May 1972. He and his present wife have a son who was three years old in February 1975. After the father left Missouri, the boys lived with their mother in a house trailer located on the home property of the childrens' maternal grandparents. The mother remarried in 1972. For all intents and purposes, the boys were in the actual care and custody of the maternal grandmother all of their lives until they were placed in the custody of petitioners.

*The Petitioners' Case*: The first week after the natural parents separated in early 1971, the father sent the mother $15. Thereafter nothing was heard from the father until May 1974 when he sent each boy a $10 money order, a $2.98 toy tractor, a six or eight line letter, and a picture postcard.[2] During the same month he also placed a telephone call, briefly talked to each boy and, via letter, asked the grandmother for a picture of the boys which she sent accompanied by a letter bearing the salutation,

"Dear Robert." The grandparents "always treated [the father] like one of the family," they had never threatened him with harm if he tried to see the boys and no one had told the father not to send money, clothing or toys to the boys or not to attempt to communicate with or about them. The grandmother said that "about three times a year" she had received from the father's aunt small money orders with directions to buy something for the boys. These money orders usually arrived during a holiday season such as Christmas or Easter. The aunt was described as a "friend" of the grandmother and her letters did not indicate the money used to purchase the money orders or checks had been contributed by the father.

*The Father's Case*: The father agreed he personally had not sent any money to the mother or the boys or to anyone in Missouri from early 1971 ($15) until May 1974 ($20). His explanation for this was that he did not have a job when he first arrived in California and thereafter when he obtained employment (although it was not the every-day-of-the-week type of employment), his working hours did not permit his attendance at the post office or at a bank during times when money orders and checks were sold. He stated, however, that when he was jobless, he borrowed money from his aunt and thereafter, subsequent to obtaining employment, gave money to his aunt which she sent, via money orders or bank checks, to the mother or the maternal grandmother. The father estimated he had sent about $1,500 "for the children" through his aunt between 1971 and 1974. Probably in 1972, according to the father, he wrote the maternal grandmother three times asking that the boys (at the most then two and one years of age) be allowed to visit him in California and offering to send them plane tickets if this was agreeable. The father said that when he received no reply to these letters he did not write again until May 1974. The father undertook to introduce as exhibits certain

2. In May 1974 Mike would have been three years and eight months of age while Russ would have been two years and ten months old.

money order and bank check stubs or receipts supposedly representing money he had given his aunt to send to the mother or the maternal grandmother. The offers of these purported exhibits were refused because the items were not properly identified and were hearsay. Nonetheless, it is noted that the rejected exhibits, had they constituted proper evidence, showed total payments of $191.50 in 1973, $20 paid in 1974 before adoption proceedings were commenced and no payments in 1971 or 1972. No complaint is directly made on appeal concerning the trial court's refusal to admit these purported exhibits.

Except for the possibility of equitable adoption, the right of adoption in Missouri depends upon the provisions of Ch. 453, considered to be a code unto itself. No adoption may be effected without compliance with the terms of that code. Being in derogation of the common law, the adoption statutes are to be strictly construed in favor of the natural parents. *In re Adoption of J. M. K.*, 363 S.W.2d 67, 70[3–6] (Mo.App. 1962). Nevertheless, the required degree of compliance with respect to adoption statutes is "substantial" and not "literal." *In re Adoption of J_____*, 396 S.W.2d 257, 261[2] (Mo.App.1965); 2 Am.Jur.2d, Adoption, § 49, at p. 900. Also, in considering the construction of any particular section of Ch. 453, regard must be had to the purpose and intent of the legislation as evidenced by all provisions of the code which contain the theme that the welfare of the child is the paramount consideration. *In re E. C. N.*, 517 S.W.2d 709, 712[6] (Mo.App.1974); *In re C., C., & C.*, 380 S.W.2d 510, 514[2] (Mo.App.1964).

"[T]he *willful* neglect contemplated by Section 453.040(4) is neglect that is intentional, deliberate, and without just cause or excuse." *In re Adoption of P. J. K.*, 359 S.W.2d 360, 363[5] (Mo.App.1962). "The willfulness of 'neglect' . . . is more of a negative proposition, simply the failure to perform the duty with which the parent is charged by the law and by conscience. The intent therefore must usually be inferred from the facts and circumstances. Such facts and circumstances would, of course,

exclude a finding of willfulness where the neglect occurred because of things beyond the control of the parent and which were not his fault. Consideration must also be given to the words '*proper* care and maintenance.' . . . [N]o two adoption cases are cast in the same mold. Many varying factors are to be considered, each in relation to all others. What would, or would not, be considered as *proper* care and maintenance in one case, might, in the light of the whole circumstances of another, be considered entirely differently." *In re C., C., & C.*, supra, 380 S.W.2d at 515.

Our review of this non-jury action is governed by Rule 73.01 as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), i. e., "the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Id.* at 32[1, 2]. Rule 73.01 further admonishes appellate courts to give due regard "to the opportunity of the trial court to have judged the credibility of witnesses."

■ Giving credence to petitioners' evidence leaves no room for doubting that the father willfully neglected to provide Mike and Russ with proper care and maintenance for a period of at least one year immediately before the adoption petition was filed. From early 1971 until May 1974, the father neglected to provide the boys or those having their actual care and custody with any money for their care and maintenance. During that time, the father did not undertake to see them or to inquire of their welfare. Although the father's economic situation was not fully developed at trial, it was evident that he was not physically disabled or destitute throughout the time involved. The father's testimony indicated

he was so regularly employed that he was unable for some three years to get to a post office or a bank during business hours and that his affluence was not so limited as to deprive him of the pleasure of a new wife and son whom he apparently had no difficulty in supporting. Sending each of the boys a $10 money order, a $2.98 toy, a short letter, a picture postcard and talking to them briefly on the telephone in May 1974, neither served to atone for the prior months of total abandonment nor evidenced the providing of *proper* care and maintenance of the children in the year before the adoption petition was filed. Cf. *In re C., C., & C.,* supra, 380 S.W.2d 510.

This court is unable to say that there was no substantial evidence to support the decree of adoption or that its award was against the weight of the evidence. Neither can it properly be said that the court nisi erroneously declared or erroneously applied the law.

▄ Finally the father says the court erred in entering the adoption decree because the petition for adoption, which merely alleged that the father "has abandoned said children for a period over one year," is insufficient to invoke § 453.040(4) and should be ordered dismissed. We agree that the quoted allegation falls short of the statutory requirement that the abandonment or neglect to provide proper care and maintenance must have been willful and the statutory requirement that the abandonment or neglect existed "for a period of at least one year immediately prior to the filing of the petition for adoption." *In re E. C. N.,* supra, 517 S.W.2d at 712. Nonetheless, we do not believe the carelessness of the pleader in this instance rendered the petition fatally defective or was insufficient to give the court jurisdiction.

It has been said that "ordinarily" (whatever that means) the filing of a proper petition is a prerequisite to the court's jurisdiction and that the petition for adoption must state facts sufficient to give the court jurisdiction. *Smith v. Benson,* 542 S.W.2d 571, 573[1] (Mo.App.1976); *Adoption of McKinzie,* 275 S.W.2d 365, 368[1] (Mo.App.

1955); *State v. Schilb,* 285 S.W. 748, 749–750[1, 2] (Mo.App.1926); 2 C.J.S. Adoption of Persons § 77, pp. 507–510; 2 Am.Jur.2d, Adoption, § 54, pp. 903–904. However, a study of the just-cited authorities makes it clear that allegations in a petition sufficient to give the court jurisdiction are the facts required in § 453.020, which states: "The petition shall state the name, sex and date and place of birth of the person sought to be adopted; the name of his parents, if known to the petitioner; and if the person sought to be adopted is a minor, the fact that petitioner has the ability properly to care for, maintain and educate said person; and if it is desired to change the name of said person, the new name of said person." This statute, setting forth the required contents necessary to give the court jurisdiction, does not mandate the pleading of any of the situations set forth in § 453.040 whereby the consent of a natural parent is not needed to effect an adoption. Albeit was necessary in this case, sans the father's written consent to adoption, for the existence of the provisions of § 453.040(4) to be satisfactorily proved before the court could properly decree adoption, inclusion of the statutory provision in the petition was not a prerequisite to the court's jurisdiction.

The father did not object to the petition as it related to § 453.040(4) before the decree was entered; neither did he object to any evidence at the trial on the ground that it was not within the issues made by the pleadings. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues." Rule 55.33(b). The issue of whether or not the father had, for a period of at least one year immediately prior to the filing of the petition for adoption, willfully neglected to provide the children with prop-

er care and maintenance, was tried by the implied consent of the parties with no objection. Consequently, the pleadings may be considered as having been amended to conform to the proof even though an amendment to the petition was not in fact made. *Condos v. Associated Transports, Inc.*, 453 S.W.2d 682, 690[11] (Mo.App.1970).

The decree of adoption is affirmed.

All concur.