827 S.W.2d 237 (1992)
H.W.S. and J.C.S., Plaintiffs/Respondents,
v.
C.T., Defendant/Appellant,
No. 58820.
Missouri Court of Appeals, Eastern District, Division One.
February 11, 1992.
Motion for Rehearing and/or Transfer Denied March 3, 1992.
*238 Thea Anne Sherry, William P. Grant, Govt. Counsel, Margulis & Grant, Clayton, for defendant-appellant.
James W. Whitney, Jr., Clayton, for plaintiffs-respondents.
Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1992.
REINHARD, Presiding Judge.
Natural mother appeals from a decree of adoption in favor of natural father and his present wife, which had the effect of terminating her parental rights to her daughter. We affirm.
H.B.S. (daughter), the only child of father and mother's marriage, was born on April 20, 1980. The marriage of father and mother was dissolved March 1, 1984 in Jefferson County, Missouri. Father and mother each remarried. Mother lived in Florida with her new husband. Father lived in Florissant, Missouri with his new wife. The decree of dissolution awarded custody of daughter to mother.
Mother later entered a plea of nolo contendere in Florida to five counts of aggravated child abuse of daughter in exchange for a recommendation by the prosecuting authorities of a sentence of seventeen years imprisonment followed by five years probation. Some of the counts alleged sexual abuse of daughter.[1]
In subsequent proceedings in the state of Florida, the court modified the custody provisions of the dissolution decree and awarded custody to father. Mother consented to this order prior to the summer of 1987. Daughter has been in the physical custody of father and his present wife since July 1987.
On March 28, 1989, father and his present wife filed an amended petition for adoption of daughter. After receiving notice of the petition, mother informed father's attorney and the court by letter that she did not consent to the adoption. The *239 court appointed counsel to represent mother's interest.
Mother was incarcerated at the time of the adoption proceeding.[2] Her counsel petitioned for a writ of habeas corpus ad testificandum, which was denied, but counsel appeared at the adoption hearing and submitted evidence on mother's behalf.
At the hearing, father testified that since he had gained custody of daughter, he and present wife had provided for all of her physical and emotional needs. He testified that mother has never communicated with daughter since he gained custody and has not provided monetary support. He conceded no support had been ordered by a court. Mother's counsel submitted letters mother had written to opposing counsel and the court which stated she did not communicate with the child because she believed a court order prevented her from doing so.
Evidence was introduced establishing that mother and her new husband (stepfather) engaged in physical, psychological and sexual abuse of daughter. This evidence consisted of the in-court testimony of father and his present wife regarding statements made by the child; the deposition of the child; and the depositions of the child's maternal grandparents.
This evidence reveals that the abuse included mother beating daughter with the buckle of a belt; inserting her finger into daughter's vagina; and engaging in oral-genital contact with daughter. Mother was also present and did nothing during at least some of the sexual acts committed upon the daughter by stepfather. These acts including touching the child's vagina; engaging in oral-genital contact with her; inserting a stick in both her vagina and rectum; and inserting his toes in her vagina while he masturbated. The child testified that stepfather also forced her to have intercourse with him.
The child and the child's maternal grandmother testified that mother and stepfather regularly used illegal drugs in the child's presence and on at least one occasion had the child sample the drugs. In addition, the child stated that mother and stepfather made her watch pornographic movies and told her that all of these activities must be kept secret or they would kill her grandparents.
The trial court found mother had both willfully abandoned her daughter and willfully, substantially, and continuously neglected to provide her with necessary care and protection for a period of more than six months prior to the filing of the petition for adoption. (A finding of either would be sufficient to eliminate the need for mother's consent.) In addition, the court found that adoption by father and his present wife would be in the child's best interest. A decree of adoption was issued granting parental rights to father and his present wife and terminating mother's parental rights.
Adoption statutes are strictly construed in favor of the natural parents. In the Interest of A.R.M., 750 S.W.2d 86, 89 (Mo.App.1988). Each adoption must be judged on its own unique set of facts. Id. at 89. In a stepparent adoption, either willful abandonment or willful, substantial, and continuous neglect of the child by the non-petitioning natural parent obviates the need for that parent's consent to the adoption. Section 453.040(5), RSMo 1986; G.S.M. v. T.H.B., 786 S.W.2d 898, 900 (Mo. App.1990). When the child is more than one year of age, the abandonment or neglect must have occurred for at least six months prior to the filing of the adoption petition. Id.
Abandonment and neglect are different, but not mutually exclusive concepts. G.S.M., 786 S.W.2d at 900. Abandonment has been defined as:

*240 first, a voluntary and intentional relinquishment of the custody of the child to another with the intent to never again claim the rights of a parent or perform the duties of a parent; or second, an intentional withholding from the child, without just cause or excuse, by the parent, of his presence, his care, his love, and his protection, maintenance, and the opportunity for the display of filial affection.
S.C.H. v. C.W.H., 587 S.W.2d 945, 947 (Mo. App.1979). Abandonment must be established by clear, cogent and convincing evidence that instantly tilts the scales in the affirmative when weighed against opposing evidence. In the Interest of A.R.M., 750 S.W.2d 86, 89 (Mo.App.1988).
Neglect normally focuses on physical deprivation or harm. It is primarily a failure to perform the duty imposed upon the parent by law and by conscience. G.S.M. v. T.H.B., 786 S.W.2d at 900; Adoption of Mike and Russ, 553 S.W.2d 706, 708 (Mo.App.1977). In stepparent adoptions, it may be shown, inter alia, by a failure to provide support, without just cause or excuse, whether ordered by judicial decree or not. G.S.M. at 900. The statute requires that the non-petitioning natural parent must have willfully, substantially and continuously neglected to provide the child with necessary care and protection for at least six months prior to the filing of the petition. Section 453.040(5), RSMo 1986.
The issue of abandonment or neglect turns on intent, which, more often that not, is an inferred fact, determined by conduct. G.S.M. at 900. This conduct may have occurred before, after, or during the six-month statutory period. Id.
The standard of appellate review announced in Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976) is applicable to adoption proceedings. S.C.H. v. C.W.H., 587 S.W.2d 945, 947 (Mo.App.1979). Accordingly, we must sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of evidence, or unless it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d at 32. We defer to the trial court's determination of credibility and to its resolution of conflicts in the evidence. We review the facts and the reasonable inferences therefrom in the light most favorable to the trial court's order. In the Interest of A.R.M., 750 S.W.2d at 87. We accept as true the evidence and permissible inferences favorable to the judgment and disregard all contrary evidence and inferences. Rule 73.01; G.S.M. v. T.H.B., 786 S.W.2d at 900.
On appeal, mother contends there was insufficient evidence for the trial court to find that she had willfully abandoned or neglected the child. She admits that she had no contact with the child for more than a year preceding the petition for adoption. However, she claims she was unable to communicate with the child because she believed a court order prevented her from doing so.
Mother's only evidence on this issue is a letter from her to the St. Louis County Circuit Court and a letter to her counsel wherein she says she is under court order to have no contact with her daughter and has complied. The adopting mother stated that she "understood that when mother was released on bail that she would be prohibited from seeing or contacting the minor child." Father said he remembered reading something about this in some of the documents.
There was no documentary evidence to support mother's contention and based upon the record before it, the court could well have determined that no such prohibition existed during her period of incarceration. The adopting mother's statement that she understood a prohibition existed related only to the period when the mother was out on bond, presumably before trial. Father's statement was presumably in reference to this same period as it was in reference to the adopting mother's statement. Under Rule 73.01, all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached. Rule 73.01(a)(2).
*241 Mother seems to suggest the finding of abandonment was based solely on her imprisonment. Although imprisonment of a parent does not per se constitute abandonment, "a majority of the decisions hold that under appropriate circumstances imprisonment may constitute abandonment." In the Interest of A.R.M., 750 S.W.2d at 89, quoting In re Adoption of K.L.G., 639 S.W.2d 619, 626 (Mo.App.1982). See also In the Interest of B.A.F., 783 S.W.2d 932, 934 (Mo.App.1989).[3] Imprisonment is certainly not a bar to a finding of willful abandonment.
In the case of In the Interest of B.A.F., 783 S.W.2d 932, the parental rights of an incarcerated father were terminated because of willful abandonment where he was imprisoned for twelve years on a rape charge.[4] The court found that during the imprisonment, the parent had failed to communicate with the child beyond merely token efforts;[5] failed to send any of his $25 per month prison wages to the support of the child; and engaged in conduct from which it could be inferred that "reunification with [the child] is not at the top of [father's] list of priorities." B.A.F., 783 S.W.2d at 934. See also In the Interest of J.H.D., 748 S.W.2d 842 (Mo.App.1988) (incarcerated father's parental rights terminated due to lack of communication and lack of support). Lack of communication and support have also been found sufficient to show willful neglect. S.C.H. v. C.W.H., 587 S.W.2d 945 (Mo.App.1979).
In the instant case, mother has failed to communicate with the child and failed to send any support. In addition, she engaged in other behavior from which it can be inferred that she willfully abandoned and neglected daughter. In this context, the nature of the crime for which mother is incarcerated is a relevant factor. As we said in In the Interest of A.R.M., 750 S.W.2d 86:
Although father's incarceration is not determinative of his abandonment of A.R.M., the nature of the crime father committed to warrant such incarceration was a relevant factor for the juvenile court to consider.
... the nature of the crime itself ... resulted in the disintegration of the family unit ...
It is difficult to conceive of a more calamitous event for a child than the murder of her mother by her father. It is absurd for the perpetrator of such a vile act to argue the he should retain his parental rights concerning that child. We can presume that father knew of the probable devastating effect of his actions on A.R.M. and of the inevitable lengthy separation from her as a consequence of his incarceration. The crime itself creates an irreparable emotional estrangement of the child from the father. His lengthy sentence will result in a physical separation during all of A.R.M.'s formative years. There is not a scintilla of *242 hope that he could actually resume his parental responsibilities....
The father destroyed the bond of parent and child. In so doing, he abandoned his child by intentionally, without just cause or excuse, withholding from his daughter his presence, care, protection, maintenance and the realistic opportunity for love and filial affection. [Emphasis ours.]
Id. at 89-90.
The conduct of mother here certainly rises to the level of a crime which can be categorized as a "calamitous event for a child." Here the mother perpetrated sexual acts upon her seven-year-old daughter and not only allowed but observed her new husband performing even more repugnant acts on the child without attempting to prevent them. In so doing, she intentionally withheld from her child, without just cause or excuse, her care and protection. See S.C.H. v. C.W.H., 587 S.W.2d at 947; A.R.M. at 90. Such acts, in and of themselves, may constitute "abandonment" under § 453.040. Id. See also In re Adoption of K.L.G., 639 S.W.2d 619 (Mo.App. 1982). Such acts are undeniably neglect.
As in A.R.M., "[w]e can presume that" mother "knew of the probable devastating effect of her actions on [the child] and of the inevitable lengthy separation from her as a consequence of [her] incarceration." A.R.M., 750 S.W.2d at 90. In light of all of these factors, the trial court did not err in finding willful abandonment of the child by mother.
Nor did the court err in finding neglect. At a minimum, mother's actions in sexually molesting and sodomizing her child and in allowing her new husband to sexually molest, sodomize, and perform other unnatural sex acts upon her seven-year-old daughter in her presence were failures to perform parental duties imposed by law and by conscience and resulted in physical harm to her daughter. See G.S.M. v. T.H.B., 786 S.W.2d at 900; Adoption of Mike and Russ, 553 S.W.2d at 708. Her failure to communicate or send even token support are also factors which support the finding. S.C.H. v. C.W.H., 587 S.W.2d 945.
We have examined mother's other points and find them also without merit. Her principal complaint is that she was unable to appear at the adoption hearing. She contends that the court erred in failing to issue a writ of habeas corpus ad testificandum, which would have permitted her to return to Missouri to testify. Mother's stated reason for personally testifying was to rebut the charge of abandonment. We recognize the gravity of proceedings which terminate parental rights and the appearance of the parent whose rights are sought to be terminated is certainly extremely important to that proceeding. The child has corresponding rights. However, there is no statutory or common law right to be present and the proceeding is not per se defective where presence is not feasible. The return of an inmate from a distant state to the court in Missouri would be exceedingly difficult, if not impossible. It is significant, as we have said earlier, that the position the mother is in is of her own making. We need not reiterate what we have said on this issue. Mother contends that if she had been in court she could have explained the reasons why she had not contacted the child. While not as satisfactory as a personal appearance, mother's position was before the court in letters written by her. Thus, her position and state of mind on that issue were not ignored by the court. Her argument was relevant on the issue of abandonment, but it was irrelevant on the charge of neglect. The matter of the issue of the writ of habeas corpus rests within the discretion of the trial court. State v. Hines, 645 S.W.2d 88, 90 (Mo.App.1982). We have examined the record and have determined that the trial court did not abuse its discretion in this case.
Judgment affirmed.
GARY M. GAERTNER and CRANE, JJ., concur.
NOTES
[1] Her new husband was charged with seven counts of aggravated child abuse of daughter, some of them involving sexual abuse of daughter.
[2] The record reveals mother had also been convicted of possession of cocaine. This offense took place after the aggravated child abuse crimes, although mother was on probation or parole on the cocaine conviction at the time she entered the nolo contendere pleas in the child abuse case. Thus, we assume she was imprisoned for abusing the daughter at the time of the adoption proceeding.
[3] Section 211.447.3(6), RSMo 1986 provides in pertinent part that when considering whether to terminate the parent-child relationship because of, inter alia, abandonment:

3. [T]he court shall evaluate and make findings on the following factors, when appropriate and applicable to the case:
* * * * * *
(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights....
In the Interest of A.R.M., 750 S.W.2d at 89 n. 2. A.R.M. states that this statute represents a legislative recognition of existing case law. Id.
[4] Father in that case had a conditional release date set for two and one half years after our decision affirming the termination. The child would have been 8 years old at the time of his release.
[5] In B.A.F., father saw the child once; notified the Division of Family Services that he desired visitation and was told to submit a plan but did not submit one because he didn't think it would do any good; sent one Christmas present he got free from the Salvation Army; and sent a card and letter after the petition for termination of parental rights was filed. Id. at 934. The court took notice of the provision of the termination statute which provides that: "The Court may attach little or no weight to infrequent visitations, communications, or contributions." Id. at 933, citing § 211.447.4, RSMo 1986. In the instant case there was no communication at all.