**In Interest of E.B.S. and L.P.**

**STATE of Missouri, Respondent,**

**v.**

**D.R., Appellant.**

**No. 18623.**

Missouri Court of Appeals,
Southern District,
Division One.

April 15, 1994.

Motion for Rehearing and Transfer
to Supreme Court Denied May 10, 1994.

**2.** K.S.A. 40–2,115 (effective April, 1984) permits coverage for punitive damages, but does not mandate or even presume them.

John T. McMullan, Pelts, Stokley & Turnbow, Kennett, for appellant.

W. Edward Reeves, Ward & Reeves, Caruthersville, for respondent.

MONTGOMERY, Judge.

The Circuit Court of Pemiscot County–Juvenile Division terminated the parental rights of D.R. (Appellant) with respect to two of her minor children, E.B.S. and L.P. She appeals. This Court affirms.

On August 30, 1989, when E.B.S. was six months old, the juvenile court entered an order placing the child in the care and custody of the Division of Family Services (DFS). The impetus for the order was an incident in which Appellant, in a state of intoxication, dropped the child in a supermarket parking lot and left him lying there. A county juvenile officer later filed a petition to terminate the parental rights of both Appellant and the child's father. On December 17, 1990, finding that the father had abandoned the child, the juvenile court terminated the father's parental rights, but not Appellant's.

Eventually, the juvenile court determined that Appellant was making progress toward rehabilitation and ordered that weekend visits with the child should begin. On January 8, 1992, the court relieved DFS from the care and custody of E.B.S., dismissed the child as a ward of the court, and ordered that the child be returned to Appellant. Three months prior to this, on October 3, 1991, Appellant gave birth to L.P. (whose father is not E.B.S.'s father).

On May 15, 1992, four months after E.B.S.'s return home, the county juvenile officer filed a petition to have both E.B.S. and L.P. declared wards of the court and placed in the care and custody of DFS. The event that precipitated this petition was a fight between Appellant and L.P.'s father, both of whom were intoxicated at the time. (Ironically, this fight occurred at the same parking lot where Appellant previously dropped E.B.S.) During the altercation, Appellant dropped L.P. to the pavement. The father then swung a board at Appellant, hitting L.P. in the process. As a result of the blow, the child suffered a head injury that required hospitalization. The county juvenile officer and DFS personnel subsequently took custody of the children. During that process, they had to search for E.B.S., whose whereabouts was unknown.

The juvenile officer then filed a petition to terminate the parental rights of Appellant and L.P.'s father. The first hearing into the matter had to be rescheduled when Appellant came to court intoxicated. At the rescheduled hearing, December 16, 1992, L.P.'s father failed to appear. Appellant did appear, and both she and the juvenile officer presented evidence. The juvenile court took the case under advisement. On December 21, 1992, the court issued an order terminating the parental rights of L.P.'s father and Appellant with respect to both children.

Appellant challenges the sufficiency of the evidence supporting the court's order. She argues that no clear, cogent and convincing evidence was presented that Appellant had abandoned, abused or neglected the two chil-

dren, or that Appellant suffered from an untreatable chemical dependency.

■ In reviewing an order of termination, we affirm a juvenile court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or the court erroneously declared or applied the law. Rule 73.01;[1] *In Interest of M.H.*, 859 S.W.2d 888, 892 (Mo.App.1993). As we review the sufficiency of evidence supporting an order, we consider the evidence and all reasonable inferences in the light most favorable to the order. *Id.* In addition, we give due regard to the juvenile court's opportunity to judge the credibility of witnesses and resolve fact issues. *In Interest of B.C.H.*, 718 S.W.2d 158, 160 (Mo.App. 1986). We will reverse the order only when we firmly believe it is wrong. *In Interest of M.H.*, 859 S.W.2d at 892.

■ The juvenile court in this case articulated two grounds for its judgment. The first, based on § 211.447.2(3),[2] was Appellant's failure to rectify the conditions that caused the removal of the children from the home. The second, based on § 211.447.-2(2)(b), was Appellant's chemical dependency. Given that the fundamental factor underlying both these grounds was Appellant's chronic alcoholism, we focus on the second—chemical dependency. The existence of even one statutory ground for termination is sufficient if termination is in the child's best interests. *In Interest of L__ E__ E__*, 839 S.W.2d 348, 352 (Mo.App.1992).

Section 211.447.2(2)(b) provides:

2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer ... if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:

. . . .

(2) The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

. . . .

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control[.]

■ The juvenile court determined that it had jurisdiction over E.B.S. and L.P. by reason of abuse and neglect. The primary basis for that determination was the chemical dependency of Appellant and L.P.'s father, which, as the court found, "prevents them from consistently providing the necessary care, custody and control of said children." The court also found that, even if given more time, neither parent was likely to rectify this chemical dependency or the other problems that led to the removal of the children from the home. In light of the substantial evidence adduced at the hearing, these findings were clearly justified.

Doris Dodd (a DFS employee) testified from first-hand experience that, on numerous occasions during the past five to seven years, she and other DFS personnel had provided assorted parenting and chemical abuse services to Appellant and had investigated and reviewed Appellant's progress often. (Prior to the instant case, Appellant's parental rights were terminated with regard to three older children.) Dodd testified that, during past visits to Appellant's home, "[t]here were usually beer cans and things around the house," Appellant "had a very strong liquor odor on her breath," and she "would become loud and boisterous about whatever we were talking about." In addition, she testified that, although Appellant had at times shown progress, she also "reverted back to the same types of behavior and the same problems." When asked for her recommendation with respect to E.B.S. and L.P., Dodd recommended that Appellant's parental rights be terminated, "because she's not succeeding."

---

1. Rule references are to Missouri Rules of Court (1994).

2. Statutory references are to RSMo Cum.Supp. 1992.

Kate Smith, the juvenile officer who initiated the termination proceedings, testified about her dealings with Appellant during the previous 10 years. Describing Appellant as an alcoholic, she told how Appellant's alcohol abuse had resulted in her first child being placed in the custody of the child's father. Smith also recounted the event that led to the severing of Appellant's parental rights to her next two children: Appellant left the children (a toddler and an infant less than six months old) alone in "a very unsafe home with nothing but drunk men and drugs," with the infant lying in a bed next to an open-flame heater. "The blankets were hot to the touch," she said.

Smith also described the first removal of E.B.S. from the home—how Appellant (while intoxicated) had dropped child in a parking lot and left him laying there; how later the "Division of Family Services worked and worked and worked with [Appellant], provided every service that could be provided"; and how Appellant "went to detox" and "seemed to be doing fairly well."

Then came the altercation with L.P.'s father, during which both he and Appellant were intoxicated. Immediately after that incident, Smith attempted to take custody of the children, but she at first could not find E.B.S., she said.

After the children were located and removed from Appellant's care and custody, "[o]nce again, we supplied the Division of [Family] Service workers, counseling, A.A. meetings," Smith testified. Nevertheless, when Appellant came to court for the first scheduled termination hearing, she "was dog-drunk," Smith said. "She disrupted the court. Her breath was very strong with alcohol. She could not walk good." [3]

"All of [Appellant's] problems, since 1983 and before, I might say, because she was drinking before that, have all been alcohol-related," Smith testified. "She—The men she goes with are all in the same shape she is. I do not believe that [Appellant]—I truly

believe that she has a disease called alcoholism, and I think it is incurable. And we place these children in terrible danger when we place them with her." When asked by the juvenile court for her recommendation, Smith answered, "I recommend termination of parental rights."

■ A juvenile court may terminate parental rights when it finds that doing so is in the child's best interests and when it appears by clear, cogent and convincing evidence that one or more statutory grounds for termination exist. § 211.447.2. "The clear, cogent and convincing standard of proof is met when the evidence 'instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true.'" *In re Adoption of W.B.L.*, 681 S.W.2d 452, 454 (Mo. banc 1984) (citation omitted); *In Interest of M.H.*, 859 S.W.2d at 892. This standard of proof may be met even though the court has before it contrary evidence. *In Interest of S— A— J—*, 818 S.W.2d 690, 699 (Mo.App.1991).

■ Appellant contends that, because she had sought treatment for alcoholism and had "pursued that treatment constantly," the juvenile court's termination of her parental rights was unwarranted. We are not persuaded. The juvenile court was entitled to believe or disbelieve Appellant's testimony.[4] Even if it believed all of her testimony, its order would likely have been the same. The court had before it substantial, competent evidence establishing that Appellant was a chronic alcoholic, that her alcoholism prevented her from providing her children with proper care, custody and control, and that even with more time she was unlikely to stop her abuse of alcohol. The fact that Appellant had "pursued ... treatment constantly" may actually have helped persuade the juvenile court that providing additional time to reform her life was useless. Evidence of repeated attempts and failures to correct problems with alcohol abuse permit a court to draw the conclusion that a parent is not

---

3. The particulars of this incident were corroborated by the testimony of Dodd and another DFS employee, both of whom were present in court at the first hearing date.

4. *In Interest of Kevin*, 685 S.W.2d 938, 941 (Mo. App.1985) (juvenile court has leave to believe all, part, or none of the testimony of any witness).

reasonably likely to change her conduct in the future. *In Interest of J.M.*, 815 S.W.2d 97, 102 (Mo.App.1991); *In Interest of J— Y—*, 637 S.W.2d 670, 672 (Mo. banc 1982).

The facts in this case are similar to those in *In Interest of M.Y.*, 724 S.W.2d 647 (Mo. App.1986).[5] There, the appeals court found that the natural mother's chronic alcohol abuse for 14 years had resulted in her children being in and out of foster care, being in risk of physical harm, missing school often, and having poor personal hygiene. Under these facts, the court held that termination of her parental rights was warranted.[6] In the instant case, Appellant has chronically abused alcohol for 10 years or more, with the result that both E.B.S. and L.P. have been in foster care the majority of their short lives and have suffered physical harm related to Appellant's alcohol abuse.

Under these facts, we are left with the clear conviction that the best interests of E.B.S. and L.P. would be served by terminating Appellant's parental rights and allowing these children to be adopted into stable homes.

The judgment is affirmed.

PARRISH, C.J., and SHRUM, J., concur.

**5.** *See also Renfro v. Jackson County Juvenile Court*, 369 S.W.2d 616 (Mo.App.1963).

**6.** The appeals court in *In Interest of M.Y.* applied § 211.447 in its pre–1985 amendment form. The case nevertheless provides helpful guidance.