In the Interest of J.M.L., C.E.B., K.L.B., and M.R.B., Minors.

JUVENILE OFFICER, Respondent,

v.

K.A.B., Natural Mother, Appellant.

No. WD 50879.

Missouri Court of Appeals, Western District.

March 5, 1996.

Beverly Sue Riordan, Columbia, Guardian ad Litem.

John Damron Smith, Columbia, for appellant.

Elizabeth K. Magee, Columbia, for respondent.

Before ULRICH, P.J., and
BRECKENRIDGE and SMITH, JJ.

ULRICH, Presiding Judge.

K.A.B. (Mother) appeals the court's termination of her parental rights to her four minor children. § 211.447, RSMo 1994. She claims that the trial court erred in terminating her parental rights in that the order was not in literal compliance with the termination statute and that the order was against the weight of the evidence. In both arguments she emphasizes that the court considered her conduct during the years of 1990–1993 instead of the "current situation."

The judgment is affirmed.

### RELEVANT FACTS

The three oldest children were originally brought to the attention of the Division of Family Services (DFS) after Mother was arrested for prostitution. DFS was also concerned with Mother's drug use and lack of stable housing. The children were found to be within the jurisdiction of the court pursuant to section 211.031.1(1), RSMo 1994, in August of 1990, and made wards of the court on October 29, 1990. J.M.L. and C.E.B. were placed in the custody of their mother, and K.L.B. was placed in foster care. In February of 1991, mother moved to Columbia, Missouri, with the two children in her custody to attend a drug and alcohol treatment program. She was discharged from the treatment facility in April before completion because she tested positive to a drug screening test. M.R.B. was born on July 16, 1991, in Columbia. Mother admitted use of cocaine and heroin during her pregnancy with M.R.B.

The three children were removed from Mother's custody again on November 25, 1991. She had left the children without suitable supervision while she went to a drug house. Mother acknowledged that she was earning extra money for the family by selling contraband drugs.

In March of 1992, Mother began a treatment plan with DFS which required Mother to overcome her drug and alcohol addictions, maintain stable housing, maintain stable employment and end her dependence on various paramours to reunite with her children. The plan included family counseling, drug screening, weekly contacts with DFS, and home visits.

A caseworker was assigned to Mother's case in 1993. She testified that when she began supervising the case the same issues that existed when jurisdiction was exercised in 1990 still existed.

Throughout the case, Mother was involved in several drug treatment programs. However, she acknowledges her continuing drug problem. She admits smoking marijuana at a party only three weeks prior to the termination hearing. She attended therapy sessions sporadically. One of Mother's therapists terminated sessions on April 1, 1993, for Mother's failure to attend scheduled sessions.

On May 20, 1994, the juvenile officer filed petitions to terminate Mother's and the natural fathers' parental rights with all four children. Hearings were held on the petition in January of 1995. The court found that the children had been within the jurisdiction of the court for more than a year and that the conditions that led to assumption of jurisdiction still persisted and little likelihood existed that those conditions could be remedied at an early date to allow reunification. The court terminated Mother's and the fathers' parental rights on February 15, 1995. Mother appeals.

### ISSUES PRESENTED

Mother raises two points on appeal, but the core of each argument is substantially the same. Therefore, the arguments are addressed together. Mother argues that the order of the trial court terminating her parental rights did not strictly comply with the

termination statutes and that the order was against the weight of the evidence because the court based its termination upon facts that significantly pre-date the termination proceeding.

## STANDARD OF REVIEW

 The trial court's order will be affirmed unless no substantial evidence supports it, it is contrary to the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *In the Interest of T _ M. E _*, 874 S.W.2d 552, 559 (Mo. App.1994). On review, the facts and all reasonable inferences therefrom are viewed in the light most favorable to the trial court's order. *In Interest of E.B.S.*, 876 S.W.2d 8, 10 (Mo.App.1994). This court will reverse only when left with a firm belief the judgment is wrong. *Id.*

## DISCUSSION

 The trial court may terminate parental rights where one or more of the statutory grounds set forth in section 211.447, RSMo 1994, is found by clear, cogent and convincing evidence and where termination is in the best interest of the child. *In Interest of L.*, 888

S.W.2d 337, 339 (Mo.App.1994). The trial court found that termination of Mother's parental rights was in the best interest of the children and appropriate under section 211.447.2(3), RSMo 1994 which states that the court may terminate parental rights if:

The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

 The statute contains findings that the trial court shall make when terminating rights under this section.[1] The statute further states additional factors for the court to evaluate in terminating parental rights under this section.[2] Mother contends that although the trial court made detailed findings of fact as required by the statute, they were based

---

1. Section 211.447.2(3). In determining whether to terminate parental right under this subdivision, the court shall consider and make findings on the following:

(a) The terms of the social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control.

2. Section 211.447.3.[T]he court shall evaluate and make findings on the following factors, when appropriate and applicable to the case:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

on occurrences between the years 1990 through 1993. She argues that the court should not have utilized these facts but instead should have made its determination based on her current situation.

■ The court complied with the statute in considering the years preceding the hearing in determining whether Mother's parental rights should be terminated. All grounds for termination must to some extent look to past conduct. *D.G.N. v. S.M.*, 691 S.W.2d 909, 912 (Mo. banc 1985). Otherwise, a parent can always argue that she has reformed since the filing of the petition, reformation usually occurring while the child is away. *Id.* A parent's conduct after the petition to terminate her parental rights has been filed cannot constitute the sole consideration of the court's decision. *In Interest of J.N.C.,* 913 S.W.2d 376, 380 (Mo.App.1996). The past provides vital clues to the present and future. *In the Interest of M.L.W.,* 788 S.W.2d 759, 762 (Mo.App.1990). Past events shape the future. "To allow only review of very recent events is both short sighted and dangerous." *Id.*

Substantial evidence was presented supporting the trial court's judgment. Mother has failed to maintain stable housing as required by the DFS service plan. The assigned caseworker testified that Mother still experienced considerable turnover in her housing. Just a few weeks prior to the hearing, Mother moved again and DFS did not have her new address (evidently, she and her companion moved into a one bedroom apartment). Mother also failed to maintain stable employment as required by the service plan. From 1989 to April of 1994, Mother held eleven jobs and experienced job turnover between April and the hearing date in January of 1995. Mother was unemployed at the time of the hearing.

■ Despite Mother's employment at various jobs during the pendency of these cases, she has not made any contribution to the support of the children since they were first placed in the custody of DFS. Contribution, no matter how minimal, demonstrates a parent's intent to continue the parent-child relationship. *In the Interest of M.H.,* 828 S.W.2d 951, 955 (Mo.App.1992); *In the Interest of M.L.K.,* 804 S.W.2d 398, 402 (Mo.App. 1991).

Mother acknowledges her long history of drug addiction. Mother's drug addiction was a major factor leading to DFS involvement originally. She claims that prison has changed her and that she learned much about herself while incarcerated. However, Mother made similar statements in a PPT meeting in the early part of 1994 when she was informed that DFS was recommending termination of parental rights. Credibility of witnesses and weight of testimony is a matter for the juvenile court. *In the Interest of M.H.,* 859 S.W.2d 888, 894 (Mo.App.1993). At the time of the hearing, eight weeks had passed since Mother's release from prison, yet she admits to smoking marijuana only three weeks prior to the hearing. This event cannot be categorized as stale as it reflects on Mother's claimed rehabilitation and her current ability or willingness to refrain from drug dependency.

The requirements for reunification have remained evident since the inception of the case. Mother failed to abide by the terms of the service plan. Her attendance at both drug treatment and therapy has been incomplete, she has provided no support for her children, and she has not stabilized her life. All of this evinces a lack of commitment to the children. DFS has exhausted all services that would likely bring about an adequate adjustment enabling return of the children to Mother within an ascertainable period of time. Therefore, substantial evidence was presented for the trial court to find that termination of K.A.B.'s parental rights was appropriate under section 211.447.

■ Although evidence was presented that mother has improved her situation, the trial court found such evidence insufficient to countervail the evidence supporting termination. Presence of evidence in the record that might support another conclusion does not necessarily establish that the trial court's decision is against the weight of the evidence. *R.L.P. v. R.M.W.,* 775 S.W.2d 167, 170 (Mo. App.1989). The judgment of the trial court is supported by competent, substantial evi-

dence and is not contrary to the overwhelming weight of the evidence.

The judgment is affirmed.

All concur.

