**In the Matter of A.B.M. and A.B.M., minors.**

**E.M., Petitioner–Respondent,**

v.

**S.M., Respondent–Appellant,**

v.

**D.B., Respondent.**

**No. 23049.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 30, 2000.

Wendell L. Hoskins, II, Caruthersville, for appellant.

Shawn D. Young, Portageville, for Guardian Ad Litem.

Lynn N. Bock, New Madrid, for respondent.

PHILLIP R. GARRISON, Chief Judge.

S.M. ("Mother") appeals the judgment of the trial court terminating her parental rights with respect to her two minor children, A.B.M. and A.B.M. (collectively referred to as "the children"). We affirm.

On May 14, 1996, E.M. ("Petitioner"), the paternal grandmother of the children, filed a petition to terminate the parental rights of Mother and a petition to adopt A.B.M., born August 29, 1989, and A.B.M, born July 29, 1991.[1] In her petition to terminate Mother's parental rights, Petitioner alleged that Mother's parental rights should be terminated in accordance with the provisions of Sections 211.447 and 453.040.[2] Specifically, Petitioner alleged:

That [Mother] ha[d] abandoned the [children] in that [Mother] intentionally murdered the biological father, which resulted in the disintegration of the family unit and left the [children] without even a modicum of parental nurturing during her incarceration. Further that [Mother] knew of the probable devastating effect of her actions on the [children] and of the inevitable lengthy separation from her as a consequence of her incarceration. Further, that the crime itself creates an irreparable emotional estrangement of the children from [Mother]. Further, that her sentence will result in a physical separation during all the [children's] formative years.

On November 18, 1998, the trial court held a hearing on the petition. At the hearing, evidence was introduced of Mother's role in the murder of the children's natural father, R.M., in May 1994, and of her subsequent conviction for second-degree murder and fifteen-year sentence.[3]

At the hearing, Petitioner testified that initially, during Mother's pending trial and subsequent incarceration, her custody of the children was made with the consent and at the direction of Mother. Petitioner further noted that at the time Petitioner obtained custody of the minor children

---

1. The petition was initially filed by Petitioner and her husband. Petitioner proceeded as the sole petitioner following her husband's death in 1998.

2. All statutory references are to RSMo 1998, unless otherwise indicated.

3. R.M. died as a result of a gunshot wound to the head. The shooter implicated Mother in the planning and execution of the crime.

there was no agreement that she would not attempt to terminate Mother's parental rights or obtain permanent custody.

Petitioner also testified that she had not allowed in-person and telephone visitation between the children and Mother based upon the advice of the children's counselor. Petitioner stated that she had allowed the children to foster a relationship with their maternal grandparents. Petitioner further testified that the Mother had provided no financial support for the children, but confirmed that the children received $778 each in monthly social security benefits.

At the hearing, Mother testified that she had enrolled in the PATCH program, Parents and Their Children, offered by the Missouri Department of Corrections, and regularly attended parenting classed designed to help inmates maintain their parent-child relationship while incarcerated. She stated her desire to visit her children, and testified that she had sent the children cards, birthday and Christmas presents, and had tried to call the children collect several times. Evidence was presented showing that the children did correspond with Mother by mail, playing tic-tac-toe and tracing their hands and feet to show their growth.

The trial court entered its Findings of Fact and Conclusions of Law on April 12, 1999, whereby it terminated Mother's parental rights. The trial court entered its revised findings on May 10, 1999. In its revised findings, the trial court based the termination on three grounds: Section 211.447.4(1), abandonment; Section 211.447.4(2), neglect; and Section 211.447.4(3), the existence of trial court jurisdiction over the children for a period of one year coupled with findings that the "conditions which led to the [trial court's] assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child[ren] can be returned to [Mother] in the near future," and that "the continuation of the parent-child relationship greatly diminishes the child[ren]'s prospects for early integration into a stable and permanent home." The trial court held that the best interests of the children would be served through the termination of Mother's parental rights. It further found that Petitioner was a suitable adoptive parent.

In her three points on appeal, Mother challenges the sufficiency of the evidence supporting the trial court's order regarding the following findings that: (1) Mother willfully abandoned the children; (2) Mother willfully neglected the children; and (3) it was in children's best interests that Mother's parental rights be terminated.

This court will affirm an order terminating parental rights unless no substantial evidence supports it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Matter of M.M.*, 973 S.W.2d 165, 168 (Mo.App. S.D. 1998). In reviewing the sufficiency of the evidence supporting an order, this court considers the evidence and all reasonable inferences in the light most favorable to the order. *In Interest of M.N.M.*, 906 S.W.2d 876, 878 (Mo.App. S.D.1995). Further, due regard is given to the trial court's opportunity to judge the credibility of witnesses. *In Interest of M.H.*, 859 S.W.2d 888, 892 (Mo.App. S.D.1993). We will reverse the order only when we firmly believe it is wrong. *Id.* In any termination of parental rights, the primary concern must be the best interests of the child. *M.N.M.*, 906 S.W.2d at 878.

Mother first contends that the trial court erred in terminating her parental rights pursuant to Section 211.447.4(1)(b) because the Petitioner failed to establish by clear, cogent and convincing evidence that Mother had willfully abandoned the children.

Abandonment has been defined by the courts as "the intentional withholding by a parent of his care, love, protection and presence without just cause or

excuse." *In re R.K.*, 982 S.W.2d 803, 806 (Mo.App. W.D.1998). Abandonment focuses on the parent's intent, taking into consideration all evidence of the parent's conduct before and after the applicable statutory period. *Z.H. v. G.H.*, 5 S.W.3d 567, 570 (Mo.App. W.D.1999).

■ In the instant case, the trial court found, in accordance with Section 211.447.4(1)(b), that Mother had willfully abandoned the children for more than six months, and had, without just cause or excuse, withheld from them her presence, care, protection, maintenance and the realistic opportunity for love and filial affection "when on or about May 19, 1994 she participated in the murder of their father, [R.M.], knowing that such a crime would separate her from the children leaving them without any provision for parental support and without making arrangements to visit or communicate with the children although able to do so." The trial court further found that Mother "destroy[ed] the family unit, and with the knowledge that the crime itself would create an irreparable emotional estrangement of the children from her and the natural father."

Mother contends that the trial court should have given greater weight in its findings under Section 211.447.4(1)(b) to the fact that she made some attempts to contact and maintain a relationship with the children, and argues that her incarceration alone does not constitute abandonment. In support of this contention, Mother cites the dissent in *In Interest of A.R.M.*, 750 S.W.2d 86, 91–95 (Mo.App. E.D.1988).[4]

■ It is true that each adoption must be judged on its own unique set of facts. *See C.B.L. v. K.E.L.*, 937 S.W.2d 734, 737 (Mo.App. E.D.1996). Further, imprisonment of a parent does not per se constitute abandonment. *See In re Adoption of K.L.G.*, 639 S.W.2d 619, 626 (Mo.

App. S.D.1982). "On the other hand, a majority of the decisions hold that under appropriate circumstances imprisonment may constitute abandonment." *Id. See also H.W.S. v. C.T.*, 827 S.W.2d 237, 241 (Mo.App. E.D.1992); *A.R.M.*, 750 S.W.2d at 89.

In *A.R.M.*, the majority in reaching its decision to terminate father's parental rights stated:

It is difficult to conceive of a more calamitous event for a child than the murder of her mother by her father. It is absurd for the perpetrator of such a vile act to argue that he should retain his parental rights concerning that child. We can presume that father knew of the probable devastating effect of his actions on A.R.M. and of the inevitable lengthy separation from her as a consequence of his incarceration. The crime itself creates an irreparable emotional estrangement of the child from the father. His lengthy sentence will result in a physical separation during all of A.R.M.'s formative years. . . .

The father destroyed the bond of parent and child.. In doing so, he abandoned his child by intentionally, without just cause or excuse, withholding from his daughter his presence, care, protection, maintenance and the realistic opportunity for love and filial affection.

750 S.W.2d at 89–90.

The conduct of Mother here certainly rises to the level of a crime that can be categorized as a "calamitous event for a child." Mother was convicted of second-degree murder for her role in the shooting death of the children's natural father. As in *A.R.M.*, we can presume here that Mother knew of the probable devastating effect of her actions on the children and of the inevitable lengthy separation from them as a consequence of her incarceration. Through her role in the murder of the children's natural father, she has inten-

---

4. Judge Karohl in his dissent in A.R.M. argued that imprisonment, even for the taking of the life of a natural parent, should not be considered an absolute grounds for abandonment. *Id.* at 91.

tionally, without just cause or excuse, withheld from the children her care and protection.

■■■ There is evidence in the record indicating that, after the murder of the children's natural father, Petitioner hindered contact between Mother and the children. Further, there is evidence in the record that Mother attempted to maintain contact with the children through telephone calls, letters, and the giving of small gifts. While a petitioner cannot create the grounds for a nonconsensual adoption, in this case it is understandable that the relationship between Petitioner and Mother may be less than cordial given that Mother was convicted of second-degree murder in the death of Petitioner's son. Furthermore, it was Mother's actions, not Petitioner's, that resulted in her separation from the children and in the destruction of the family bond.

The trial court's finding is supported by substantial evidence in the record. Clearly, there was no abuse of discretion. Mother's first point is, therefore, denied.

■■■ We need not address Mother's second point concerning the issue of willful neglect. A trial court may terminate parental rights when it finds that doing so is in the children's best interest and when it appears by clear, cogent and convincing evidence that one or more statutory grounds for termination exist. § 211.447.4. The existence of even one statutory ground for termination is sufficient if termination is in the children's best interests. *In re S.L.J.*, 3 S.W.3d 902, 907 (Mo.App. S.D.1999); *In Interest of E.B.S.*, 876 S.W.2d 8, 10 (Mo.App. S.D.1994).

■■■ In Mother's final point, she argues that the record does not support the trial court's finding that it was in the children's best interests to terminate Mother's parental rights. We do not agree. The record reflects that Mother willfully abandoned the children through her participation in the murder of the children's natural father, and that Petitioner is able to provide a positive home environment for the children. Under these facts, we are left with the clear conviction that the best interests of the children would be served by terminating Mother's parental rights and allowing them to be adopted by Petitioner.

The judgment of the trial court is affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.