249 S.W.3d 864 (2008)
In the Interest of M.L.R., M.D.F., S.D.F., J.C.M., and K.M., III, Respondents,
S.F. (Mother), Appellant,
v.
Juvenile Officer, Respondent,
K.R. (Putative Father), C.B. (Putative Father), L.H., JR., (Putative Father), K.M., JR., (Putative Father), Defendants.
Nos. WD 68823, WD 68824, WD 68825, WD 68826, WD 68827.
Missouri Court of Appeals, Western District.
April 15, 2008.
*866 Katherine J. Rodgers, Kansas City, for Respondents, M.L.R., M.D.F., S.D.F., J.C.M., and K.M., III.
William R. Jackson, Kansas City, for Respondent, Juvenile Officer.
Katie M. Many, Kansas City, for Appellant.
Before VICTOR C. HOWARD, C.J., LISA WHITE HARDWICK, and JAMES EDWARD WELSH, JJ.
JAMES EDWARD WELSH, Judge.
S.F. ("Mother") appeals the four judgments entered by the circuit court terminating her parental rights to her five biological children. In points one through three, Mother argues that the circuit court's findings with respect to sections 211.447.4(2)(b), (d) and 211.447.4(3), RSMo 2000,[1] were not supported by substantial evidence, were contrary to the weight of the evidence, or were an erroneous application of the law. In points four and five, Mother argues that the circuit court erred in its findings as to the best interests factors set out in section 211.447.6 RSMo 2000, and abused its discretion in determining that the termination of Mother's parental rights was in the best interests of the children. We affirm.
Viewed in the light most favorable to the circuit court's ruling, the record and testimony revealed the following facts. In the Interest of C.L.W., 115 S.W.3d 354, 356 (Mo.App.2003). Three of Mother's five children were born drug exposed. M.F. was born drug exposed to phencyclidine in 1996. S.F. was born drug exposed to marijuana in 1997. In January 2002, Mother gave birth to her fifth child, K.M., who was drug exposed to phencyclidine. The Children's Division offered Mother drug treatment in an effort to allow her five children to stay with her. Mother failed two drug treatment programs. On February 20, 2002, child abuse and neglect petitions were filed alleging Mother was a habitual drug abuser. Subsequently, all five children came under jurisdiction of the circuit court on April 19, 2002. On September 24, 2002, first amended petitions were filed in each case alleging Mother abused phencyclidine, had educationally neglected two of her children, and, due to her substance abuse, was incapable of providing the necessary care, custody, and control for her children in that she was incarcerated on drug-related charges. After a hearing, the circuit court sustained those allegations, and all five children were placed in the custody of foster parents under the supervision of the Children's Division.
*867 At a review hearing held on July 22, 2003, the circuit court ordered the Children's Division to pursue permanency placements for the children, noting that Mother was returning to prison on July 25, 2003, due to revocation of her probation. While the children were in the custody of the Children's Division, Mother was incarcerated on three separate occasions on drug-related charges, totaling one year and four months of prison time.
Between 2002 and 2007, Mother entered drug treatment programs approximately ten times. Mother never successfully completed any drug treatment program. During this time period, Mother was ordered to submit to random drug testing. Over 60 attempts were made to test Mother. Mother either refused or ignored those requests over 40 times. Mother tested negative only three times in December 2002 and January 2003. Mother testified at trial that she uses phencyclidine about once a month. Mother stated that she began using phencyclidine in 1996 and agreed that after each incarceration she returned to phencyclidine use.
While the children were in the custody of the Children's Division, Mother was employed at several different restaurants but did not provide any financial support to her children other than a few gifts and clothing. There were periods where the Children's Division had entirely lost contact with Mother.
Periodic review hearings occurred throughout 2004 and 2005. The children were kept in alternative care and numerous services were offered to Mother including: drug treatment, parenting classes, parent aide services, individual therapy, housing assistance, employment assistance, psychological evaluation, referral to mental health facility for outpatient and intensive in-home services. Mother did not attend family support team meetings on a regular basis, and at one meeting her behavior was so out of control that one child had to be removed from the meeting.
On August 10, 2006, petitions for termination of parental rights were filed in the interests of all five children. A couple of weeks prior to the termination trial, Mother reported to a Children's Division supervisor that she did not want any more services because she was not going to get her children back. The termination of parental rights trial was held July 24-26, 2007. On the first day of the trial, Mother submitted to a court ordered drug test, which showed she was positive for marijuana and phencyclidine. On August 9-10, 2007, the circuit court entered judgments terminating the parental rights of Mother to her five children. Mother appeals.
Termination of parental rights is allowed when a statutory ground for termination is supported by clear, cogent, and convincing evidence and termination is determined to be in the best interests of the child by a preponderance of the evidence. In the Interest of K.A.W., 133 S.W.3d 1, 12 (Mo. banc 2004); In the Interest of L.M., 212 S.W.3d 177, 181 (Mo.App.2007). "Clear, cogent, and convincing evidence instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." K.A.W., 133 S.W.3d at 12. In our review, we defer to the circuit court's ability to judge the credibility of witnesses and will affirm the judgment unless there is no substantial evidence to support it, it is contrary to the evidence, or it erroneously declares or applies the law. Id. at 11. Any conflicting evidence will be viewed in the light most favorable to the judgment of the circuit court. Id. at 12.
Even though Mother alleges five points of circuit court error, only one statutory *868 ground under section 211.447 is sufficient to support termination of parental rights if properly pleaded and proved. In the Interest of E.D.M., 126 S.W.3d 488, 492 (Mo.App.2004). In Mother's first point, she contends that the circuit court erred in determining, pursuant to section 211.447.4(2)(b), that Mother abused or neglected the children due to her chemical addiction, which cannot be treated so as to enable her to consistently provide the necessary care, custody, and control over the children. Mother does not dispute her chemical addiction, but she contends that she can be treated so that she can provide her children with the necessary care, custody, and control. Mother testified at the termination hearing that she could be drug free in three months with the help of outpatient services. Mother argues that the evidence did not support the circuit court's findings. We disagree.
Section 211.447.4(2)(b) provides for termination of parental rights where the child has been neglected or abused. The circuit court must make findings as to four subsections, (a) through (d); however, proof of one is sufficient for termination. In the Interest of S.C., 914 S.W.2d 408, 411 (Mo.App.1996). The circuit court found by clear, cogent, and convincing evidence that all five children were abused or neglected. The circuit court considered, made the required findings, and determined that termination was supported under subsection (b) and (d). As to the subsections (a) and (c), the court held there was no evidence that Mother had a mental condition which prevents her from caring for her children and that there was no evidence of severe acts of physical or sexual abuse by Mother. With respect to subsection (b), the circuit court stated that Mother:
[H]as a chemical addiction, which prevents her from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable her to consistently provide such care, custody and control over the child. Evidence showed that the mother was offered services through drug court and several treatment programs. The records reflect the mother has entered treatment at ReDiscover, C-Star, Samuel Rodgers and Renaissance West more than ten times between 1992 and November 24, 2004 and was discharged unsuccessfully on each occasion. Specifically the records show she attended treatment at the following times:
1992 for three weeks
May 8, 1996 until May 13, 1996
2000 for six months
November 12, 2001 through December 26, 2001
March 1, 2002 through April 3, 2002
June 6, 2002 until June 26, 2002
December 4, 2002 through January 13, 2003
February 10, 2003 until April 10, 2003
April 23, 2003 until April 30, 2003
May 2, 2003 through May 5, 2003
May 13, 2003 through June 30, 2003
March 22, 2004 until April 30, 2004
September 29, 2004 until November 24, 2004
She was terminated from the drug court program on July 1, 2003. The mother was incarcerated due to her conviction and revocation of her probation for her possession of a controlled substance charge, case number CR00-5101. Despite her incarceration, once released from jail she was unable to maintain a drug free lifestyle. The mother was inconsistent with drug testing provided through the Family Drug Court Program and DRAGNET. Of the more than 60 attempts that were made to test the mother, she was negative on only 3 occasions in December 2002 and January 2003. She tested positive on 16 *869 occasions, most recently testing positive for phencyclidine on February 21, 2007. On the other more than 40 occasions she failed to make herself available for testing or failed to produce a sample. During trial, [Mother] tested positive for phencyclidine, marijuana and cocaine.
This court has held that the circuit court could reasonably infer Mother would not be successful in rehabilitation from evidence of past failures at treatment. In the Interest of N.M.J, 24 S.W.3d 771, 779 (Mo. App.2000). The totality of Mother's conduct, both prior to and after the filing of the petition, must be examined. Id. at 780. The fact that Mother had tried and failed so many drug treatment programs likely helped convince the circuit court that three more months of outpatient services was pointless. Similar to this case is In the Interest of S.C., 914 S.W.2d at 412, where this court held that the circuit court was justified in concluding that father suffered from a chemical dependency that was resistant to treatment and which prevented him from providing the necessary care, custody, and control of his children, where he continued using drugs and repeatedly failed to successfully complete substance abuse treatment. Similar to that analysis is In the Interest of E.B.S., 876 S.W.2d 8 (Mo.App.1994), where this court's Southern District held that evidence of repeated attempts and failures to correct problems with alcohol abuse permit a court to conclude that it is not reasonably likely that the parent is going to change her conduct in the future. Id. at 11-12.
In this case, there was substantial, competent evidence that established that Mother had a long-term, chronic drug addiction; that her drug addiction kept her from providing her children with the proper care, custody, and control; and that, even with more time, she was unlikely to stop her drug abuse. There was no evidence that Mother could become drug free except her own testimony. The circuit court was entitled to believe or disbelieve Mother's testimony as to her ability and desire to be drug free in three months with the help of outpatient services. N.M.J., 24 S.W.3d at 779. We find that there was clear, cogent, and convincing evidence from which the circuit court could find that Mother had an untreatable chemical dependency, which prevented her from exercising care, custody, and control of her children.
In Mother's points four and five, she argues that the evidence shows it would be in the best interests of the children to be returned to Mother, after completion of drug treatment and other services. After determining the existence of a statutory ground supporting termination of parental rights, the circuit court must determine by a preponderance of the evidence whether termination is in the best interest of the child. In the Interest of A.A.T.N., 181 S.W.3d 161, 167 (Mo.App. 2005). "The determination of what is in a child's best interests is a subjective assessment based on the totality of the circumstances[,]" and we review for abuse of discretion. Id. Pursuant to section 211.447.6, the circuit court made the following findings: (1) the children have few, if any, emotional ties to Mother, (2) Mother has not maintained regular visitation or contact, (3) Mother has the financial ability to provide support but failed to do so; she demonstrated the resources to obtain phencyclidine but failed to provide any support for her children, (4) additional services would not be likely to bring lasting adjustment enabling the children to return to Mother within any ascertainable time period, given that Mother has failed to engage in services to address her substance abuse, unstable housing, and parenting skills, and (5) Mother has repeatedly *870 demonstrated her disinterest and lack of commitment to the children through her abandonment of the children, her failure to maintain contact with the Children's Division and the children, her failure to engage in drug treatment, her failure to attend circuit court proceedings, and her failure to make adequate progress in services to bring about reunification.
At the time of the trial, Mother had abused drugs for over eleven years. As a result, all five of her children have been in foster care for the majority of their lives, three of her children were born drug exposed, and two of the children missed school often. Mother failed to provide any substantial support to her children while they were in the custody of the Children's Division. There was no regular contact with the children, in part due to Mother's incarceration and her unstable living arrangements when not in prison. Mother never successfully completed a drug program, and she tested positive for phencyclidine on the day of trial to terminate her parental rights. There is ample evidence in the record to support the circuit court's findings. Under these facts, we are left with the clear conviction that the best interests of all five children were met by terminating Mother's parental rights.
This court declines to address Mother's other two points since we found the record supports termination pursuant to section 211.447, which requires us to affirm the circuit court's judgment regardless of any merit of Mother's other points. C.L.W., 115 S.W.3d at 356.
We, therefore, affirm the circuit court's judgment terminating Mother's parental rights.
All concur.
NOTES
[1] Since the circuit court's ruling, section 211.447 was amended, and a new section was added changing the numbering of the sections, but the sections addressed in this appeal are substantively the same.